**Beth R. TERRILL, Administratrix, et al., Appellants,**

v.

**Mary N. DAVIS, Appellee.**

**No. 4164.**

Court of Civil Appeals of Texas.

Eastland.

July 28, 1967.

Rehearing Denied Aug. 25, 1967.

Martin, Moore & Tackett, Elvin E. Tackett, Ft. Worth, for appellant.

Ponder & Pearson, Sweetwater, for appellee.

GRISSOM, Chief Justice.

In 1951, Myrtal D. Mullican, a widow, purchased the Sundown Motel in Sweetwater and sold a one-half interest to Thomas B. Davis. They made a contract which provided for operation of the motel by Davis with profits and losses being shared

equally. It contained a provision that if, during the lifetime of said parties, either desired to sell his interest he should give the other written notice stating the terms and conditions and the other party should have thirty days to decide whether to buy that interest. It provided that if Mrs. Mullican should die while said parties were joint owners her heirs, or devisees, could not sell her interest for ten years without the consent of Davis.

On November 25, 1955, Mrs. Mullican and Mr. and Mrs. Davis made another contract governing the disposition of their interests in their lifetime and at their death. Paragraph 3 was as follows:

"In the event the First Party (Mrs. Mullican) shall die while either or both of the Second Parties are still living, then the First Party does hereby give, grant, bargain, sell and convey unto the Second Parties or to whichever of them shall survive the First Party, all of the First Party's undivided one-half interest in the aforesaid real estate and the improvements thereon so that the Second Parties, or whichever of them shall survive the First Party, shall thereafter have, hold and own the above described real estate and improvements and all personal property used in connection therewith free and clear of any claim of the estate of the deceased First Party and free and clear of any indebtedness which may be owing by the Second Parties to the First Party at the time of the latter's death, it being the intention of the First Party that all such indebtedness be cancelled at the death of the First Party. For the purpose of carrying out the provisions of this paragraph, the First Party has this day executed and acknowledged two general warranty deeds, one conveying her undivided one-half interest to Thomas B. Davis and the other conveying her undivided one-half interest to Mary N. Davis; and in the event both of the Second Parties survive the First Party at her death, then the deed conveying the First Party's undivided one-half interest to Thomas B. Davis shall be delivered by the aforesaid bank, with whom said deeds have been placed in escrow, to Thomas B. Davis, but in the event only Mary N. Davis, then the deed conveying said property to Mary N. Davis shall be delivered by said bank to Mary N. Davis. Also the First Party has this day executed and acknowledged a release of a note in the original principal sum of Nineteen Thousand, Five Hundred and No/100 ($19,500.00) Dollars, said note being hereinabove mentioned, which release shall be delivered by said bank to whichever of the Second Parties shall survive the First Party. In the event both of the Second Parties shall predecease the First Party, then the provisions of this paragraph and the conveyance herein made and the warranty deeds and release hereinabove mentioned shall be of no force and effect but shall be null and void and the aforesaid Bank shall return to the First Party the Warranty Deeds and the release hereinabove mentioned."

There was a like provision in favor of Mrs. Mullican in the event both Mr. and Mrs. Davis died before she did. Said deeds and a release of the $19,500.00 note were executed by Mrs. Mullican and delivered to a Sweetwater Bank, which acknowledged their receipt and agreed to hold and deliver them in accord with said 1955 contract.

Thereafter, Mrs. Mullican became insane and her guardian wrote Mr. and Mrs. Davis that she would not honor said agreement, whereupon, the Davises instituted this suit seeking a declaratory judgment that the 1955 contract was valid and that upon the death of Mrs. Mullican with Mr. and Mrs. Davis surviving that said property would be owned by them in fee. Before the trial Mrs. Mullican died. Mrs. Terrill became administratrix of her estate. Mrs. Mullican was survived by both Mr. and Mrs. Davis. Thereafter Mr. Davis died,

while the case was pending, leaving a will which has been duly probated, devising his property to his wife and appointing her independent executrix. She has qualified. The legal representative and heirs at law of Mrs. Mullican were made defendants. Both sides filed motions for summary judgment. The 1955 agreement was a part of both motions. Mary N. Davis' motion for summary judgment was supported by the affidavit and depositions of her deceased husband and pleadings and admissions. The court sustained it and rendered judgment awarding said motel, improvements and the personal property used in connection therewith to Mrs. Davis and held that she was vested with the fee simple title thereto and that Mrs. Mullican's representative and heirs had no right, title or interest therein. The motion of Mrs. Mullican's representative and heirs for summary judgment was overruled and the bank was ordered to deliver to Mrs. Davis the deeds and instruments deposited with it. The Davis' note for $19,500.00 had been paid during the lifetime of all of said parties. The defendants have appealed.

Appellants say that Mrs. Davis obtained said judgment upon the theory that she was entitled to said property under the 1955 contract; that Mr. and Mrs. Davis, surviving joint owners, became the owners thereof in fee upon the death of Mrs. Mullican. That statement is correct. But, appellants contend that said contract and the instruments executed in connection therewith and delivered to the bank were ineffectual to convey title to Mr. and Mrs. Davis as a deed; that they did not become effective until after the death of Mrs. Mullican and constituted an attempt to make a testamentary disposition of said property by an instrument which lacked the requisites of a will. They say that, first and foremost, it is their position that no present or vested interest was conveyed by Mrs. Mullican to the Davises and, since it was an attempted testamentary disposition without compliance with the requisites of a

will, said instruments could not convey said property or support the judgment rendered. We do not agree with the appellants' said contention. They cite Wren v. Coffey, Tex.Civ.App., 26 S.W. 142, wherein an instrument purporting to be a deed, but which was testamentary in character, was held not effective as a present conveyance; Carlton v. Cameron, 54 Tex. 72, 77, wherein a recorded instrument in the form of a deed but not intended to take effect until death was held not to convey the property. They also cite cases such as De Bajligethy v. Johnson, 23 Tex.Civ.App. 272, 56 S.W. 95; Brown v. Payne, 142 Tex. 102, 176 S.W.2d 306; and Chavez v. Chavez (Sup.Ct.), 13 S.W. 1018, and Sanderson v. Sanderson, 130 Tex. 264, 109 S.W.2d 744. The instrument in question in Brown v. Payne, 142 Tex. 102, 176 S.W.2d 306, was held by our Supreme Court to be an attempt to execute a will without complying with the requisites thereof. With due deference to the earnest insistence of appellants, we think said authorities are not controlling. Appellants argue that the 1955 agreement provides that either may sell all their undivided one-half interest to a third party; that no provision was made for sale of the interest either had in a joint tenancy but all of his interest, which, they say, was inconsistent with appellee's claim of the right of survivorship, because either could sell all his interest in his lifetime and each had a right to dispose of his one-half interest and thereby prevent any interest from passing to the other upon his prior death. They say that if death is relied upon as the occurrence passing title, then it is an attempted testamentary disposition which is ineffective because the requisites of a will were not complied with. We do not agree with appellants' contentions.

As stated by appellee, the controlling question is whether the 1955 contract created the right of survivorship in Mr. and Mrs. Davis upon the prior death of Mrs. Mullican. We hold that it did. Ap-

pellants say it was contrary to public policy to create a joint tenancy in land with right of survivorship at the time the motel was acquired and at the time of execution of the 1955 contract. We think this contention of appellants is erroneous and that the contract for a joint tenancy with right of survivorship was not unlawful or contrary to public policy. Old Article 2580 provided:

"Where two or more persons hold an estate, real, personal or mixed, jointly, and one joint owner dies before severance, his interest in said joint estate shall not survive to the remaining joint owner or joint owners, but shall descend to, and be vested in, the heirs or legal representatives of such deceased joint owner in the same manner as if his interest has been severed and ascertained."

It was in force in 1939 when the court in Chandler v. Kountze, Tex.Civ.App., 130 S.W.2d 327, held that said statute did not prevent parties to a written contract from expressly agreeing therein that jointly owned property should pass to and vest in the survivor and that such a contract was not in contravention of said statute but was enforceable when it clearly expressed such an intention. Our Supreme Court refused a writ of error. In 1955 that statute was repealed and Section 46 of the Probate Code was enacted. It provides:

"Where two or more persons hold an estate, real, personal, or mixed, jointly, and one joint owner dies before severance, his interest in said joint estate shall not survive to the remaining joint owner or joint owners, but shall descend to, and be vested in, the heirs or legal representatives of such deceased joint owner in the same manner as if his interest had been severed and ascertained. Provided, however, that by an agreement in writing of joint owners of property, the interest of any joint owner who dies may be made to survive to the surviving joint owner or joint owners, but no such

agreement shall be inferred from the mere fact that the property is held in joint ownership."

The provisions in the Probate Code that by an agreement in writing joint owners may provide that the interest of a joint owner who dies may be made to survive to the surviving joint owner, but that no such agreement shall be "inferred from the mere fact that the property is held in joint ownership", was simply a declaration of the law as it then and theretofore existed, and as it had been declared in Chandler v. Kountze, supra. See also Shroff v. Deaton, Tex.Civ.App., 220 S.W.2d 489. In 15 Tex.Jur.2d, Section 5, at page 158, it is stated that under our Probate Code the interest of a deceased joint owner does not survive to the remaining joint owner but goes to his heirs or legal representative "unless there is a written agreement that the deceased owner's interest survives to the surviving owner." The question whether such an agreement may be oral is not presented. The trial court correctly rendered the judgment appealed from. The 1955 written contract clearly expressed the intention that the surviving joint owner should become vested with the fee simple title to said jointly owned property. That agreement was not prohibited by statute or public policy.

■ We overrule appellants' further contention that Mrs. Mullican's guardian terminated that agreement by renouncing it. See 64 A.L.R.2d 921 and 941; 69 A.L.R.2d 1053; Hammond v. McArthur, 30 Cal.2d 512, 183 P.2d 1, 3; Taylor v. Smith, 116 N.C. 531, 21 S.E. 202; 20 Am.Jur.2d, Section 4, page 97. See also Adams v. Jones, Tex.Civ.App., 258 S.W.2d 401; Johnson v. Johnson, Tex.Civ.App., 306 S.W.2d 780, 783, (Writ Ref.); Davis v. East Texas Savings and Loan Ass'n, 163 Tex. 361, 354 S.W.2d 926, 931.

All of appellants' points are overruled. The judgment is affirmed.