**Hilda DAURAY et vir, Appellants,**

**v.**

**Robert GAYLORD, Appellee.**

**No. 16704.**

Court of Civil Appeals of Texas.

Dallas.

April 8, 1966.

Rehearing Denied May 6, 1966.

Burford, Ryburn & Ford, Logan Ford and James H. Holmes, III, Dallas, for appellants.

Carter, Gallagher, Jones & Magee, and Morton A. Rudberg, Dallas, for appellee.

DIXON, Chief Justice.

This appeal calls on us to construe the meaning of a property settlement contract in which the word "contemplate" is the key word so far as our decision is concerned.

In 1958 Robert Gaylord and wife, Hilda Gaylord, paid approximately $21,000 for about two acres of improved property on a point overlooking what was then known as Lake Dallas in Denton County, Texas. Subsequently they spent about $50,000 improving and remodeling the house which was located on the land, bringing the total investment of the Gaylords in the property to approximately $71,000.

On November 19, 1962 the Gaylords were divorced. In connection with the divorce they entered into a property settlement agreement which was approved by the court. By its terms fee simple title to the Lake Dallas property was awarded to Hilda Gaylord. Paragraph IX of the contract is the hub of the present dispute. It is as follows:

"Robert E. Gaylord owes the Empire State Bank, Dallas, Texas, the sum of $23,300.00 which indebtedness is secured in part by 50 shares of Southwestern Life Insurance Company stock constituting the separate estate of Hilda Wofford Gaylord and described in Paragraph A of Exhibit "A" attached to this instrument. The parties hereto contemplate that the indebtedness of Robert E. Gaylord to the Empire State Bank in the amount of $23,300.00 will be paid out of the proceeds of the sale of the homestead property (exclusive of its contents, and described as FIRST TRACT in Paragraph 1-A hereof) as hereinafter provided. For the purposes of this paragraph, the price contemplated for which the homestead property shall be sold shall not be less than $70,000.00 net (after payment of all commissions, costs and expenses attendant on, arising out of or accruing as the result of said sale). Any net sale price in excess of $70,000.00, aforesaid shall be divided equally between the parties to this Property Settlement Agreement. In this respect, Hilda Wofford Gaylord agrees to apply the proceeds of such sale to the payment and ultimate liquidation of said note. In the meantime, however, Robert E. Gaylord agrees to service said loan, pay the interest thereon as it accrues, and any principal payments that may be demanded by the Bank pending the ultimate liquidation of the loan by application of the proceeds of the sale of the homestead property aforesaid. Furthermore, Robert E. Gaylord hereby guarantees that none of the stock collateral described in Paragraph A of Exhibit "A" attached hereto and pledged to secure the loan aforesaid, shall be sold, disposed of or otherwise applied to the payment of said note, and in this connection the said Robert E. Gaylord hereby agrees to indemnify and hold

harmless the said Hilda Wofford Gaylord from any liability, suits, claims, loss, damage, expense or cost by reason of her stock being security for the loan aforesaid.

"Robert E. Gaylord further agrees, in addition to the covenants above, to pay all reasonable costs of maintenance of the house, yard, roadway, water well and incidental buildings on the premises, all taxes assessed against the property, premiums on the insurance policies on the house and the contents as such policies presently exist, all utility bills for a period beginning on the date of entry of final decree of divorce herein and continuing for 18 months thereafter."

Thereafter Hilda Gaylord married Charles Dauray who was joined with her as a defendant in the trial court and an appellant here.

The Lake Dallas property has not been sold. Because of such failure to sell the property Robert Gaylord filed this suit against his former wife, now Hilda Dauray, and her husband, Charles Dauray. In his Second Amended Petition, filed May 29, 1965, Robert Gaylord charges that Hilda Dauray has failed to make reasonable efforts to sell the property in question at its market value though she has had more than a reasonable time to do so. He prays for foreclosure of his equitable lien of $23,300 against the property, for appointment of a receiver and for damages.

In their answer appellants say that they have tried diligently to sell the property for not less than $70,000, pursuant to the agreement in Paragraph IX of the contract, but have received no offers.

The cause was tried before the court without a jury. In entering judgment for appellee the court found that Paragraph IX of the contract "when properly construed obligates defendants herein to sell the property therein described within a reasonable period of time from October 30, 1962 and at a price equivalent to its cash market value rather than at a price not less than $70,000 net, the proceeds of which shall be applied to Robert Gaylord's obligation in the sum of $23,300 due and owing to the Empire State Bank of Dallas, Texas." The court further found that appellee has an equitable lien on the Lake Dallas property to secure payment of the $23,300, which lien should be foreclosed.

The court rendered judgment appointing a receiver to sell the property if appellants fail to do so within 180 days from date of judgment. Appellee was not awarded a money judgment for damages.

## OPINION

Both appellants and appellee assert that the contract is not ambiguous, and that therefore we must seek the intention of the parties from the contents of the written agreement itself without resort to other evidence.

In their first point on appeal appellants assert that the court erred in requiring them to sell the Lake Dallas property at a price equivalent to its cash market value when the property settlement agreement establishes the minimum sales price for which the property is to be sold at not less than $70,000 after payment of all commissions, costs and expenses of sale.

Appellants contend that the word "contemplate" as used means "intend" and indicates a binding agreement. Appellee on the other hand contends that the word has a precatory rather than a mandatory meaning and may be equated to the word "desire".

The only Texas case in point which has come to our attention is Newsome v. Brown, 157 S.W. 203, 204 (Tex.Civ.App., no writ hist.). In that case appellant and appellee had signed an instrument in writing which stated that plaintiff contemplated moving his saw mill to another location and he would hire defendant to haul timber to the new site. Plaintiff did not move to the new site as contemplated. Defendant

filed a cross-action for damages. In holding against the defendant's contention the court held that the agreement was unambiguous and in using the word "contemplate" the plaintiff plainly did not mean that he "had determined and thereby bound himself to move the mill, but meant that he was considering the matter of moving it, * * *." Cases from other jurisdictions supporting appellee's contention are: In re Milton's Estate, 48 Wash.2d 389, 294 P.2d 412 ("'Contemplated' is a precatory word, a word of desire or expectation and not of command."); and Read v. Fox, 119 App. Div. 366, 104 N.Y.S. 251, 253 ("The word 'contemplates' indicates rather an expectation or intention, than a promise or undertaking.").

The above holdings comport with the dictionary definition of "contemplate":

> "1. To view or consider with continued attention; to regard thoughtfully; to meditate on; to study.
>
> "2. Hence, to look upon (mentally); to view in a certain light or respect; to regard.
>
> "3. To have in view as contingent or probable or as an end or intention; to look forward to; to purpose or intend." Webster's New International Dictionary, Second Edition, unabridged.

The property settlement is thirteen pages long and consists of fourteen numbered sections. The words "agree" and "agrees" are used many times in the contract to express the contractual promises and obligations of the parties. It is only in one sentence in Section VIII and two sentences in Section IX that the word "contemplate" is used. Inasmuch as the parties could just as easily have used the word "agree" where they have used the word "contemplate" if they had intended to bind themselves contractually, it seems obvious to us that their failure to do so is indicative of a contrary intention.

Appellants cite the cases, among others, of Denker v. Twentieth Century-Fox Film Corp., 26 Misc.2d 1035, 210 N.Y.S.2d 241 and Jenks v. Jenks, 385 S.W.2d 370 (Mo. App.). We have given the holdings in those cases our serious consideration. We have concluded that however proper these holdings may have been with reference to the particular contracts there being considered, they should not control our holding in construing the particular contract which is here before us.

Appellants argue that appellee is inconsistent in that he says that the word "contemplate" as used in the second sentence of Paragraph IX binds the parties to use the proceeds of the sale to pay Robert Gaylord's $23,300 debt to the bank, but as the word is used in the third sentence the use of the word does not bind the parties to sell the property for a price not less than $70,000 net. It is not the second sentence on which appellee relies to obligate appellants to apply the proceeds of the sale to pay appellee's debt. It is the fifth sentence in the paragraph, which is as follows: "In this respect, Hilda Wofford Gaylord *agrees* to apply the proceeds of such sale to the payment and ultimate liquidation of said note." (Emphasis supplied.)

We have reached our conclusions in this case from a construction of the language contained between the four corners of the settlement contract itself considered as a whole. Benge v. Scharbauer, 152 Tex. 447, 259 S.W.2d 166. But if additional support for our conclusion were necessary we think it would be found in the undisputed circumstances here involved. It has been held a number of times that even in the case of unambiguous contracts proof of existing circumstances may be presented, not to change the legal effect of the unambiguous contract, but to enable the court to apply the language used therein to the facts as they then existed. King v. City of Dallas, Tex.Civ.App., 374 S.W.2d 707, 712. In the last named case this court, speaking

through Justice Bateman, quoted our Supreme Court in Murphy v. Dilworth, 137 Tex. 32, 151 S.W.2d 1004. Other cases are cited in the King case.

■ Such circumstances are present in this case. It is undisputed that on September 13, 1963 Hilda Dauray (then Hilda Gaylord) wrote to Arthur Kramer, Jr., a real estate broker, and listed the property with him for sale at a price of $69,500 out of which Kramer was to be paid a commission of five per cent. The above price included draperies, carpeting and rugs except a small oriental rug at the front door. This is considerably below the net price of $70,000 which appellants now allege was the minimum price at which the property could be sold under the terms of the contract. It is not claimed that Hilda Dauray obtained the consent or even consulted Robert Gaylord before listing the property with Kramer for sale at a gross price of $69,500.

Appellants first point on appeal is overruled.

In their second point appellants complain that the court erred in appointing a receiver to sell the property after the expiration of 180 days from the date of judgment when the settlement contract establishes a minimum sales price of $70,000 for which the property could be sold.

■ The trial court concluded that a reasonable period of time had been allowed Hilda Dauray to sell the property. This conclusion was based on the rule that when a contract is silent as to terms establishing a time for realization of the sale of property the court should imply that the sale should be consummated within a reasonable time. We think the court was correct in so holding. Berne v. Keith, 361 S.W.2d 592 (Tex.Civ.App., writ ref. n. r. e.); Baker v. Texas & P. Ry. Co., 309 S.W.2d 92 (Tex. Civ.App., writ ref. n. r. e.); Hall v. Hall, 158 Tex. 95, 308 S.W.2d 12; Moore v. Dilworth, 142 Tex. 538, 179 S.W.2d 940; Cheek v. Metzger, 116 Tex. 356, 291 S.W. 860 (Comm.App.); Texas Farm Bureau Cotton Ass'n v. Stovall, 113 Tex. 273, 253 S.W. 1101 (S.Ct.).

■ Appellants seek to invoke the rule stated in 17 Am.Jur.2d, p. 420 to the effect that words which fix an ascertainable fact or event by which the term of a contract's duration can be determined make the contract definite and certain in that particular. See also 13 Tex.Jur.2d 252 and Hutchinson v. Hutchinson, 48 Cal.App.2d 12, 119 P.2d 214. Appellants argue that this contract expressly provides that the property shall not be sold for less than $70,000, and that such language fixes the contract's duration: that is, when the purchase price of not less than $70,000 is realized and not before. In overruling appellants' first point we held that the contract by its terms does not require that the property be sold for a price not less than $70,000. Consequently there is no basis for the contention presented in appellants' second point. The latter point is overruled.

■ In a cross-point appellee prays that we affirm the trial court's judgment interpreting the contract but that we reverse that portion of the trial court's judgment extending the time for performance and appointing a receiver; and that we render judgment for $23,300 damages. We find nothing in the pleadings or the evidence to justify our rendering a judgment for appellee for damages of $23,300. Appellee's cross-point is overruled.

The judgment of the trial court is

Affirmed.